Good morning, Your Honor. My name is Ji-Hsien Lee, and I represent the Dictionary Industries. May it please the Court, I would like to start off by addressing the issue of the government arrest in East Breeze on whether or not the Court lacks jurisdiction reviewing the Board's March 13th decision denying petitioner's asylum application because petitioner, in this case, failed to file a timely petition for review of that decision. The answer to that question is no. The BIA vacated the immigration judge's decision and denied petitioner's application for asylum because it believed that petitioner was not primarily eligible for asylum. The BIA, in its April 22nd decision, used exactly the same reasoning that petitioner was not primarily eligible for asylum to deny petitioner's motion to reconsider and to reopen. Therefore, reviewing the BIA's denial of the motion necessarily involves a review of the issue whether or not petitioner was primarily eligible for asylum. Accordingly, the issue expressed in petitioner's opening brief, whether or not the BIA erred in finding, as a matter of law, in finding that petitioner had failed to meet his burden of proof, showing that he's eligible for asylum, is very much alive before this Court. Even the Government acknowledges in its brief, by citing this Court's case, Magyar v. Ashcroft, the Government acknowledges that unless the denial of reconsideration explicitly relies upon reasoning contained in the previous order, an order denying reconsideration must be reviewed standing on its own. That's on page 18 and 19 of the Government's brief. But here, Your Honours, the BIA explicitly relied upon the reasoning in its March 13th decision by saying, and I'll read from the BIA's April 22nd decision, the BIA says, as previously stated on appeal, we declined to extend the protection to legally unmarried partners. So thus, the March 13th decision must be reviewed in connection with April 22nd decision. The second point I want to address is that the BIA abused its discretion in denying petitioner's motion to reconsider and to reopen. The BIA, in its March 13th decision, denied petitioner's asylum application for the reason that petitioner, according to the BIA, petitioner was not the spouse of the woman who had forced abortion. And because, according to the BIA, petitioner and that woman plainly were not married. That's the BIA's word, plainly were not married. And then petitioner, in its motion to reconsider and to reopen, pointed out that there was a spousal relationship between petitioner and the woman who had the abortion. Because they went through a traditional marriage. And then the BIA did not address the argument that petitioner was the spouse of the woman who had forced abortion. But by a slight of hand, changed its reasoning from petitioner and the woman were plainly not married to legally were not married. This court in Major v. Ashcroft held that the BIA's shifting of reasoning indicated that the BIA acted arbitrarily and irrationally, and thereby abused its discretion in denying the motion to reopen. Another aspect in which the BIA abused its discretion is that in its March 13th decision, the BIA itself found that petitioner failed to establish that his legal incapacity to marry had any direct connection to a coercive family planning policy, indicating that had petitioner been able to establish such a connection, the outcome of his case would have been different. Then, when petitioner made an attempt to show such a connection through introduction of 1991 policy documents, the BIA simply stated in its April 22nd decision that for reasons stated above, the submissions do not establish that petitioner is now prima facie eligible for relief. But when you look at the reasons stated above, the BIA in its April 22nd decision never discussed whether or not there was a connection between petitioner's incapacity to marry, legally marry, to a coercive family planning policy. So therefore, I submit to the court that the BIA's failure to address the 1991 policy documents constitutes an abuse of discretion. For the reasons stated above, using the BIA's phrase here, that the BIA has abused its discretion by denying petitioner's motion to reconsider and to reopen, I urge the court to grant this petition for review and remand the case to the BIA for further proceedings. I do so with a sense of great urgency because my client came to this country in March 1999 when he was 19 years old and he has remained in the government's custody ever since. He has paid with four and a half years to all the authority in order that he be released. No, Your Honor. I don't think this court has the authority. Not to my knowledge. I will ask the court to direct the request to the government. I can. I'd like your view of the case. It's different. You don't have to answer now if you don't know. Yes, Your Honor. Actually, by remanding this case to the BIA and then the BIA's order of removal is not administratively final, and then the petitioner can have the opportunity to go in front of an immigration judge to have him bounded out. I understand that. I just wondered whether you thought there was a quicker way to do it. Should you prevent that? All right. That's fine. Thank you, Your Honor. I would like to again reserve the remainder of my time for any possible. Thank you. Good morning, and may it please the court. My name is Jocelyn Wright. I'm here on behalf of the respondent, the United States Attorney General. The board is well within its discretion to deny Mr. Ma's motions to reopen and to reconsider, and therefore the April 22nd order should be affirmed. And I stress that it is only the April 22nd order which is properly before the court in this petition for review, because as we have pointed out in our brief, the March 13th decision in which the board decided that he was ineligible for asylum and declined to extend a matter of CYZ to cover legally unmarried partners was never a timely petition. By legally unmarried, you mean that the Chinese government would not allow them to be married because they were underage. Their marriage would not have been recognized in China. They were married in a ceremony, but it was not one recognized by the Chinese government under its anti-family policy. Well, according to Mr. Ma, they were traditionally married, yes. There's no dispute about that, is there? Not from the record, no. But again, the March 13th decision, as we have discussed in our brief, is not properly before the court. Yes, we know you've asserted that. Notwithstanding the arguments that the petitioner has set forth today. And the reason for that is a motion to reconsider, and he filed the motion to reconsider, and a motion to reconsider only asks the board to revisit the issue based on the factual record that exists. And a motion to reconsider, as part of the requirement, requires that the movement point out legal or factual errors in the underlying decision, which would require the board to reconsider. Well, it says it's a motion. According to the board, it says application for reconsideration and reopening. Yes, Your Honor. And the reason that the board construed it as both a motion to reconsider and a motion to reopen is because he attached allegedly new evidence. Correct. But the documents would be properly attached to a motion to reopen. Exactly, to a motion to reopen. But it can't be considered with a motion to reconsider. No, I understand that. But the board construed it as a motion to reconsider and reopen. Yes. So don't we have to construe it the same way? Of course. So the documents are before us via the motion to reopen? Yes. Okay. But with respect to the motion to – but the board's denial of the motion to reconsider has to be construed within the parameters of the standard for review of motions to reconsider and the legal requirements governing a motion to reconsider, which, again, requires the movement to point out legal and factual error based on the existing record that was before the board when it decided it's March 13th. So even if you grant the motion to reopen, let's overlook your objection to the attachment of the document. Let's assume they're properly attached and he has a motion to reconsider and reopen. You say we can consider the documents in connection with a motion to reopen. Yes. And if that's granted, then you have a record that includes those. If the motion to reopen is granted – I mean, is reversed by this Court. Well, I'm not contesting that the Court can consider the documents that were attached. I'm simply saying that the board did not err in denying the motion to reconsider because in denying the motion to reconsider, it could not consider the documents that were attached to that motion. It had to consider those documents. Although it really – I don't know that it really matters. The – you don't – one of the documents shows that he was married in a traditional ceremony, which you're not contesting anyway. So that document's really not necessary. And that's part of our point. The document only establishes that he is what he calls in his own terms a de facto spouse, which under the legal definition of de facto means that it is legally defective in form. Okay. So it's contrary to the Chinese anti-family policy. They wouldn't recognize marriage because they didn't want to have children born. They didn't – they did not recognize the marriage because they were – Mr. Mao was underage at the time of the traditional ceremony, yes. And so if that's part of the anti-family policy of the Chinese government, that would be the policy that the statute's directed on. The refugee statute, Your Honor? The statute that allows admission for people who are forced to abortion and other forms of persecution. Well, it's – no, the statute doesn't grant refugee status to anyone subject to that policy. There has to be an element of forced sterilization or forced abortion. Well, they do grant – there is. But for the male, you do grant under – if there's a legal marriage, you grant it pursuant to that statute. Yes. Yes. Yes. And the only thing that makes this case different is that because of the Chinese policy designed to discourage children that the statute is aimed at, the marriage is not legal. Well, not necessarily, Your Honor. As the Board held – or as the Board held in the end as well, simply setting a minimum age for marriage is not alone persecutory. And he has not – he has waived any challenge to that finding by failing to brief it in his opening brief. And even – I guess put another way, but for the underage marriage, I mean, if China recognized the marriage, then asylum would be virtually automatic. Well, I wouldn't say virtually automatic, but certainly it would be – we would not have the issue before the court. I'm sorry. Which are the defense to asylum aside from the fact that China doesn't recognize the marriage? Well, that's the main issue in this – in the court – I mean, before the court, Your Honor, is that CYZ does not extend its protection. No, no, I know. You seem to imply that there was some other reason that the petitioner's asylum request should be denied in this case. Oh, no. I'm sorry. I don't mean to imply that at all. The only basis in this before – that he was denied asylum is because he – that China does not recognize his marriage as a legally valid marriage. And the fact that it's not a legally valid marriage in the country where the ceremony is performed is consistent with other parts of the immigration statute regarding recognition of foreign marriages for domestic purposes under the immigration law. I guess my question was if – you say there's nothing wrong with policies about having marriages under age. You know, there might be a policy that said you can't be married if you're under the age of 12. Obviously, if there was such a policy, we would recognize it. If there were a policy in England that said you can't be married under the age of 12, people came and said we got married at 11, we could recognize the English policy. And you're saying that's true with China. It's an underage policy, which is a legitimate policy. I believe that's what the board – What the BIA is saying. Yes. And my question to you is if, contrary to that, if it were the case that the policy were part of the population control program that the statute aimed at, if that were the purpose of the underage policy, then I assume your result would be different. I don't believe it would be, Your Honor. Why not? Because even though it's part of the policy, the family planning policy, again, the statute limits its protection to refugee status to where the person has either been forced to undergo forced sterilization or abortion or resisted it in some other manner. Not necessarily. The Chinese government's policy is governing the marriageable age. But there is a forced abortion here. Yes, there is. But with respect to the inability to register the marriage, the forced abortion does not. Let's say, for example, that China set the minimum age for marriage at 62. And any – said anybody under the age of 62 is in illegal marriage, and therefore we have the right to enforce the policy. I mean, I think we would reasonably construe that as part of the population control policy which the statute addresses, right? Yes. But, again, whether or not it's part of the persecutory – persecutorial nature of the forced sterilizations, that would be another issue, which, again, is not present before the Court because the age of the minimum marriageable age isn't set quite so high as 62. No, but I think it gets back to Judge Reinhart's question, is that if one were to find that the minimum age requirement in China was an integral part of the population control program at which the statute is directed in this case, then that would be a different matter than simply a rational determination of the minimum age. I would have to disagree, Your Honor. I don't think that the fact that it's a part of the family declining policy is that the Chinese government automatically renders it persecutorial in nature and automatically qualifying under the refugee statute because it has other parts as well. It has recommended that they recommend the use of contraception, and it doesn't outlaw voluntary abortions as well. And even the board members, the concurring opinions to the matter of CYZ, recognize that those are not alone human rights violations or persecutory, but if combined with some type of forced nature, for example, the forced sterilization, then it becomes a different matter and it becomes relevant. But in this case, it is combined. In this case, you have the prohibition against marriage because of the family control policy, assuming that that's part of that policy, and you have a forced abortion as a result. But no, Your Honor. I don't think that one comes from the other. Yes, the marriage was not legally recognized. However, the forced abortion was a separate issue, and he was fined separately. What do you mean a separate issue? It had nothing to do with the fact that they weren't legally married? I don't believe that the documents in the record relate to the enforcement of the family declining policies between unmarried women and women who are legally married with respect to forced abortions. So all women get forced abortions? Married, unmarried, whatever age? They just automatically all get abortions? Not automatically, Your Honor, but I believe that the enforcement doesn't depend on the woman's marriage status. What does it depend on? On whether or not it's an early birth. What do you mean early birth? In the sense that it's a birth that's not – if the woman is not – is below some kind of age level. And I see that my time is up, but unless the Court has any further questions, then we respectfully request that this petition for review be denied. Thank you, counsel. Well, they don't have to have a rebuttal. Sometimes it's just as well – All right. Submission of the case will be deferred pending decision of the unbanked case in Lee v. Ashcroft. Next case on the calendar. Let's see. Next case is Lynn v.
judges: Browning, Reinhardt, Thomas